## SANDERS v. THE STATE.

1. An indictment for larceny after trust, charging the defendant simply by name, but not alleging he was a bailee of any kind, with fraudulently converting to his own use, *or* otherwise disposing of 15 head of beef cattle worth $20.00 per head, which had been entrusted to him, but not stating for what purpose, cannot, on special demurrer thereto, be upheld under section 4422 of the code, because it fails to state in what character or capacity the defendant was so entrusted; nor under section 4424, because it does not allege the object of the bailment.

2. An indictment under either of the above sections charging the disposition of the property in the alternative, is not good, when this objection is raised by special demurrer.

3. In such an indictment, the description of the property as set forth in the first head-note is sufficient.

4. When evidence was admitted without objection, and there was no motion to rule it out, this court cannot consider whether such evidence was legal and relevant or not, the point not being properly made.

February 23 1891.

Criminal law.   Larceny after trust.   Indictment.
Bailment.   Practice.   Before Judge MILLER.   Bibb
superior court.   April term, 1890.

Reported in the decision.

M. G. BAYNE and R. W. PATTERSON, for plaintiff in
error.

W. H. FELTON, JR., solicitor-general, and HARDEMAN
& NOTTINGHAM, *contra*.

LUMPKIN, Justice.

1. The indictment charged Sanders with larceny after
trust, alleging that he did, "having been entrusted by
G. W. Bird with 15 head of beef cattle worth $20.00
per head, fraudulently convert the same to his own use,
or otherwise dispose of the same without the consent
of said Bird, and to the injury of said Bird in said
amount, and without paying to said Bird on demand
the full value or market price thereof, which demand
was made."   The defendant demurred specially to the
indictment on several grounds, including the following :
(1) that the indictment did not set out the purpose for
which the cattle were delegated in trust; (2) that it did
not specifically describe the property ; (3) that it did
not show how the property was disposed of, but charged
the same to have been "otherwise disposed of."

To sustain this indictment it must conform to the re-
quirements of either section 4422 or 4424 of the code.
The former of these sections relates to factors, commis-
sion merchants, warehouse-keepers, wharfingers, wag-
oners,   stage-drivers,   common   carriers,   or *any   other
bailees*.   We take it that this section means the same
as if it had read any other *like* bailees ; that is, it was
intended to apply to all bailees, who from the very na-
ture of their business invite the confidence of the public,
and the entrusting to them of personal property to be
dealt with in the course of such business.   In each in-

stance, the particular character of the business would, of itself, indicate the purpose for which the bailment was made, and hence this section does not specifically require the purpose of the bailment to be stated. It is true the section does use the words "or any other bailee," but these words follow immediately an enumeration of several particular kinds of bailees and should be construed to mean other bailees of like character, bailees *ejusdem generis.* In Sutherland on Statutory Construction, §268, it is said : "When there are general words following particular and specific words, the former must be confined to things of the same kind," and a case is cited where an act imposing a penalty for hauling any timber, stone, or other thing, except on wheeled carriages, was held not to extend to straw, but confined to weighty things likely to cause injury to roads. Radnorshire Co. Road Board *v.* Evans, 3 B. & S. 400. In the next section another case is referred to wherein an act authorizing landlords to distrain for rent "all sorts of corn and grass, hops, roots, fruits, pulse, or other product whatsoever, which shall be growing on any part of the estates demised" was held not to include trees, shrubs and plants growing in a nursery garden. Clark *v.* Gaskarth, 8 Taunt. 431. Again, in §270, the author says: "When a specific enumeration concludes with a general term, it is held to be limited to things of the same kind." "It is restricted to the same genus as the things enumerated"; and cites Countess of Rothes *v.* Kircaldy W. W. Commissioners, L. R. 7 App. Cases, 706, and Fenwick *v.* Schmalz, L. R. 3 C. P. 315. In the same section we find these words : "It was enacted that 'no tradesman, artificer, workman, laborer, or other person whatsoever, shall do or exercise any labor, business or work of their ordinary callings upon the Lord's day.' This was held not to include a farmer, or drivers of stage coaches, or attorneys"; and numerous cases are cited.

These illustrations might be multiplied indefinitely, but it is hardly necessary. The principle contended for is stated in slightly different words, in Endlich on Interpretation of Statutes, §405, as follows: "But the general word which follows particular and specific words of the same nature as itself, takes its meaning from them, and is presumed to be restricted to the same genus as those words; or, in other words, as comprehending only things of the same kind as those designated by them; unless, of course, there be something to show that a wider sense was intended." It would, therefore, seem clear that the words "or any other bailee" in section 4422, must be so restricted as to include only bailees of like kind as those specifically enumerated, such as might be termed "professional" bailees, or bailees engaged in some sort of business which requires the custody, handling or transportation of the property of others. Now, as the defendant below in this case was neither designated as a bailee of any such kind, nor so described as that it could be reasonably inferred from the words used he was intended to be so designated, this indictment cannot be supported under that section.

It will now be inquired if the indictment is good under §4424. That section is certainly broad enough to include all persons, if the charge is properly set forth, because it enacts that "if *any* person, who has been entrusted," etc., but it also unmistakably requires that the purpose of the trust shall be declared, because as to each of the numerous classes or kinds of property mentioned in the section it specifies a particular object for which the same shall be entrusted, and makes the violation of that particular trust a crime. This question has been definitely settled by this court in the case of *Carter* v. *The State*, 53 *Ga.* 326. Referring to this very section, Judge Trippe, on page 328, says: "It is

as much necessary that the character of the bailment, the purpose for which the thing is entrusted, shall be set forth in the indictment, as it is proper to describe the thing or article itself." The decision of our own court, above cited, is borne out fully by a very recent Kansas case, that of State v. Griffeth, reported in 25 Pacific Reporter, p. 616. That was an information for embezzlement, the gist of which offence is, of course, very similar to that of our statutory offence of larceny after trust. The head-note is as follows: "An information under section 90 of the crimes act against a bailee must set forth the character of the bailment, and the purpose for which the defendant was entrusted with the property. A charge that the defendant embezzled certain property of another which had been, prior thereto, delivered to defendant as bailee, without alleging from whom the property was received or the purpose for which it was delivered to him, will be held fatally defective on a motion to quash." Johnston, J., delivering the opinion, says, in substance, that nothing was stated in the information indicating the special purpose for which the property was placed in the defendant's hands, or the conditions upon which he was expected to hold, dispose of, or return it, and that the "information should contain the essential facts to be proved, and whatever is necessary to put the defendant on notice of that with which he is charged, and of which he is to be convicted." As the indictment against Sanders does not set forth the character of the bailment to him, or allege any purpose for which the cattle were delivered to him, and this point was distinctly made by the demurrer, the indictment was not sufficient to bring the case under this section, and having shown it was not good under the other section, it follows that it should have been quashed.

2. The indictment charged that the defendant did

v 86-46

fraudulently convert the property to his own use, " *or* otherwise dispose of the same." We think this was bad pleading. If the charge intended to be made against the defendant was that he fraudulently converted the property to his own use, the indictment might have stopped, as to that allegation, without adding the words above quoted, and would, doubtless, have been sufficient for that purpose. If it was intended to charge him with making some other felonious and unlawful disposition of the property, what that disposition was should have been stated, and even if this had been done, the two things ought not to have been connected by the disjunctive " or," because this leaves the defendant uncertain of what particular form of larceny after trust he is accused. It is no reply to this to say the indictment follows the words of the statute. The statute in this section, so far as relates to the disposition of the property, makes at least two kinds of larceny after trust, one by fraudulently converting the thing entrusted to defendant's own use, and another by making some other disposition of it different from that for which it was delivered to him. The defendant when he demands it, as by demurrer, is entitled to know for what he must answer. The pleader may, if he chooses, charge him with committing the offence in more than one way, by using the copulative conjunction, and setting out the facts with sufficient fullness, but he may not allege that defendant committed the crime in one of two ways. That would not affirmatively charge he committed it in either way. The case of *Johnson* v. *The State*, 8 *Ga.* 453, does not conflict with this view, because in that case neither the motion to acquit nor to quash the indictment was made on the ground that the charge *was in the alternative,* but rather because " no *specific sum* of money, or *specific article* (was) alleged or proven to have been won or lost." Hence the

precise point now being considered was not raised at all in that case, nor was there any special demurrer to the indictment as in the case at bar. The following is the doctrine laid down in Wharton's Criminal Pleading and Practice, §161: "The certainty required in an indictment precludes the adoption of an alternative statement. Thus if the indictment charge the defendant with one or other of two offences, in the disjunctive, as that he murdered or caused to be murdered, . . . . sold spirituous or intoxicating liquors, etc., it is bad for uncertainty." See also §162, which reads as follows: "Where a statute disjunctively enumerates offences, or the intent necessary to constitute such offences, the indictment cannot charge them disjunctively. Thus where a statute against unlawful shooting affixes a penalty when the act is done with intent to maim, disfigure, disable, or kill (in the disjunctive), the disjunctive statement of intent is bad. Under statutes also, describing the several phases of forgery disjunctively, it is held fatal to say that the defendant forged, or caused to be forged, an instrument, or that he carried and conveyed, or caused to be carried and conveyed, two persons having the small-pox, so as to burden a certain parish. It is therefore error to state the successive gradations of statutory offences disjunctively; and to state them conjunctively, when they are not repugnant, is allowable." Numerous authorities are cited under this section.

3. The description of the property as set forth in the first head-note was sufficient in a case of this kind. If the indictment had been for simple larceny, it would not have been so, because it would not have met the requirements of section 4398 of the code, but as our statutes against larceny after trust do not prescribe what kind of description shall be made of the property, we may resort to general principles and other author-

ities in determining what will suffice. In 2 Bishop on Criminal Procedure, §700, numerous illustrations are given of descriptions of stolen property in indictments which were held sufficient. These descriptions are not, in many instances, fuller than that in this case against Sanders. It was held in Short *v.* The State, 36 Tex. 644, that "one beef steer of the value of fourteen dollars, the property of," etc., was good. In §702 of Mr. 'Bishop's work just referred to, he gives the rule for determining the sufficiency of a description of the stolen things in larceny. The language this distinguished author uses is so apt, I quote the entire section : "The object to be gained by the description of the stolen things—namely, to individualize the transaction, will indicate how definite it should be. The court should be able to see from it that the things are, in law, the subjects of larceny; else the indictment will not, as it ought, disclose a *prima facie* case. It has been said, likewise, that the jury should be able to see, from the description, that the articles proved at the trial are the same which the indictment mentions. But this rule would be too strict for practical use, and the cases show that it is not observed; though, of course, *variance* in the description would be ill. The rules are, therefore, that the description should be such as, in connection with the indictment, will affirmatively declare the defendant to be guilty, will reasonably inform him *of the particular instance meant,* and put him in a position to make the needful preparations to meet the charge at the trial." If the charge was simple larceny of the cattle, it would be necessary to describe the animals more particularly than in the indictment now before us, because our statute so provides, doubtless in order that the defendant might be fairly put on notice of what cattle he was accused of stealing; but when the charge is that he was entrusted by the prosecutor

with a certain number of beef cattle, and fraudulently converted them to his own use, he is put on notice *of a particular transaction* between himself and the prosecutor, and will easily apprehend it is this transaction to which the indictment refers. In other words, the description in the indictment, in connection with the other allegations thereof, will make it affirmatively appear to the defendant what particular instance is meant, and thus enable him to make the necessary preparations to meet the charge at the trial.

4. The motion for a new trial complains that certain evidence was admitted, but does not state that any objection was made thereto, or any motion to rule it out. It does not appear, therefore, that the court made any ruling at all on this question, and this court, so far as this point is concerned, has nothing before it upon which to rule. On this point nothing further need be added than what is said in the fourth head-note.

*Judgment reversed.*